# In the United States Bankruptcy Court for the Southern District of Georgia
## Savannah Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
*By camerson at 10:08 am, Aug 14, 2015*

In the matter of: )
)
WETDOG, LLC, ) Chapter 11 Case
)
*Debtor.* ) Number 13-40601-EJC
)

## OPINION

This case is before the Court on Wetdog, LLC's ("Wetdog") amended objection to Belle Resources, Ltd.'s ("Belle") claim (dckt. 193); Wetdog's motion in limine (dckt. 204); Belle's Application of Oversecured Creditor for Allowance of Professional Fees and Costs (§ 506(b) Motion") (dckt. 220); and Belle's motion to strike (dckt. 236). The Court held a hearing on these matters on February 17, 2015.

Wetdog owns and operates the Foley House Inn, which is a nineteen-room bed and breakfast located in historic downtown Savannah, Georgia. Grant and Allisen Rogers each own 50% of Wetdog, and they personally guaranteed its debt to Belle. The Court confirmed Wetdog's reorganization plan over Belle's objections on September 8, 2014, and no party appealed the confirmation order.

According to Belle's proof of claim and the confirmed plan, Belle has a $1,882,320.14 secured claim in Wetdog's bankruptcy case. Belle's claim is secured by a first-in-priority lien on real property worth $2,939,401.00 (according to the

approved disclosure statement). Consequently, Belle was an oversecured creditor and entitled to add "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose" to its secured claim under § 506(b) of Title 11 of the United States Code ("Bankruptcy Code"). Indeed, Belle's proof of claim includes an addendum that purports to reserve its right to post-petition interest, attorney fees, and other charges and costs. (*See* Claim 3-1.) Nevertheless, prior to confirmation, Belle neither sought the allowance of such interest and reasonable fees, costs, and charges nor objected to Wetdog's plan of reorganization based on the plan's failure to provide for the payment of these amounts.

The main issue before the Court is whether Belle now, on motion filed over four months after plan confirmation, may increase the amount of its secured claim to compensate it for such interest and reasonable fees, costs, and charges. Regarding interest for the roughly seventeen-month period between the petition date and the order confirming Wetdog's plan ("Pendency Period"), Belle asserts that it is entitled to the contractual default rate of around 13%.[1] Also, Belle seeks to add the following amounts to its secured claim: pre-confirmation attorneys' fees and costs in the amount of $126,966.57, accountant and expert witness fees of $13,105.00, and engineering and expert witness fees of $12,500.00.

This dispute came to light after confirmation when Belle sent a spreadsheet to Wetdog showing the amount it claimed it was still owed after giving

[1] The default rate under the contract is the lesser of 18% or the Texas maximum lawful rate, which Belle estimates to be around 13%.

Wetdog credit for payments made during the bankruptcy case. In the spreadsheet Belle charged 18% interest[2] during the Pendency Period and added certain fees described above to the amount owing for work performed by lead counsel and local counsel on its behalf.

In response, Wetdog filed a claim objection, contending that Belle is barred from now asserting its entitlement to interest at the note's default rate during the Pendency Period and is instead limited to the floating contract interest rate of LIBOR plus 4.25% (about 4.5% for the relevant period). Regarding the "reasonable fees, costs, or charges provided for under the agreement" under § 506(b), Wetdog asserts that Belle is now barred from claiming these amounts and that the majority of the fees were unreasonable in any event. After accounting for cash collateral payments it made to Belle during the case and Pendency Period interest that it agrees it owed, Wetdog contends that the outstanding balance of Belle's secured claim was $1,770,586.27 as of the confirmation date. (Ex. D1-C.)

For its part, Belle filed a post-confirmation motion relying on § 506(b), which asks the Court to determine that the fees described above are part of the payoff balance of its lien. Belle asserts that the language in an addendum to its proof of claim adequately preserved its rights. In the end, Belle seeks a court order confirming its position that is was still owed $2,161,103.05 on the confirmation date. (Belle's Br., dckt. 225, at 2.)

---

[2] Belle later revised downward the applicable interest rate to about 13%, which its expert concluded was the maximum lawful rate under Texas law.

AO 72A
(Rev. 8/82)

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. These matters are "core proceeding[s]" within the meaning of 28 U.S.C. § 157(b)(2)(B) and (K). *See In re Amron Techs. Inc.*, 376 B.R. 49, 49 (Bankr. M.D. Ga. 2007) (Walker, J.). No party, at any time during these proceedings, has questioned the Court's authority to enter a final, binding judgment on the matters presented. *See Universal Am. Mortg. Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir. 2003). In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the Court makes the following findings of fact and conclusions of law.[3]

## II. FINDINGS OF FACT

To finance a portion of the acquisition price for the Foley House Inn, Wetdog borrowed $1,940,000.00 from Sterling Bank. In a letter dated March 26, 2013, Comerica Bank (as successor in interest to Sterling Bank) sent notice to Wetdog referencing § 13-1-11 of the Official Code of Georgia Annotated ("Georgia Code"), declaring that Wetdog was in default, and demanding full repayment within ten days. (Ex. D-6.) Before that ten-day period expired, Wetdog filed its Chapter 11 petition on April 5, 2013.

---

[3] The Court reserves its right to make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

Soon thereafter, attorneys C. James McCallar Jr. and Tiffany E. Caron of the McCallar Law Firm were appointed counsel for the debtor in possession and have served in that capacity throughout this case. (Dckt. 17.)

On April 9, 2013, Wetdog moved for authorization to use Comerica Bank's cash collateral, which was the rental income produced by the Foley House Inn. (Dckt. 6.) On April 24, 2013, the Court entered the first interim order on cash collateral (authorizing such use for a ninety-day period), which was consented to by Comerica Bank. The consent order provided for monthly adequate protection payments of $11,750.00 to Comerica Bank commencing on May 1, 2013 with payments "applied according to the original terms of the note." (Dckt. 23, at 4.) On July 16, 2013, the Court entered a second interim order authorizing Wetdog to use Comerica Bank's cash collateral for another ninety-day period, which was again consented to by Comerica Bank. (Dckt. 39.)

Comerica Bank sent two documents titled "Loan Payment Notice" to Wetdog during the bankruptcy case. The first notice has a "Bill Date" of April 28, 2013 and shows an "Accrual Rate" of interest of 4.5326%. (Ex. D-3.) The second notice has a "Bill Date" of June 27, 2013 and shows an "Accrual Rate" of 4.524%. (Ex. D-3.)

On August 6, 2013, which was the claims-bar date for non-governmental claims (dckt. 4), Comerica Bank filed a proof of claim. (Claim 3-1.) In the proof of claim, the bank asserted that the amount of its claim as of the petition date was $1,882,320.14. It also asserted that its claim was fully secured by the real estate

AO 72A
(Rev. 8/82)

comprising the Foley House Inn. An addendum to the proof claim provides in relevant part:

> 3. Debt Amount. As of the Petition Date, the Claimant holds a claim against the Debtor and its estate, in the aggregate amount of $1,882,335.58.[4] The claim consists, in part, of the following:
>
> | Unpaid Principal: | $1,786,089.56 |
> |---|---|
> | Accrued and Unpaid Interest: | [$]89,195.58 |
> | Accrued and Unpaid Fees: | [$]7,035.00 |
> | Attorney's Fees: | |
> | TOTAL: | $1,882,320.14 |
>
> Plus all other fees, costs and other amounts due under the Loan documents.
>
> 4. Post-petition interest, attorneys' fees and expenses. In accordance with Section 506(b) of the Bankruptcy Code, Claimant claims in addition to the foregoing amounts:
>
> a. Post-petition interest at the maximum rate provided in the loan documents referred to in this schedule and/or by applicable law;
>
> b. Post-petition attorneys' fees as provided in the loan documents referred to in this schedule and/or by applicable law; plus
>
> c. Other charges and costs incurred by Claimant in their case, including without limitation, as the same may be applicable or permitted under the applicable loan documents, late charges, late fees, non-sufficient funds fees, costs of appraisal and environmental studies and any advances made by Claimant, including without limitation, advances for taxes, assessments, deposits, insurance or other purposes attributed by Claimant as protection or preservation of the collateral, including interest on such advances, late charges, and costs.
>
> . . . .

[4] This $1,882,335.58 figure appears to be an error. In Box 1 of its proof of claim, Belle lists $1,882,320.14 as the "Amount of Claim as of Date Case Filed." (Claim 3-1, at 1.)

(Claim 3-1, at 5–6.) Also, the promissory note attached to the proof of claim provides: "It is stipulated and agreed that reasonable attorney's fees shall be FIFTEEN AND 00/100 PERCENT (15.00%) of all sums due hereunder *unless any party pleads otherwise*." (Claim 3-1, at 12 (emphasis added) (footnote added).)

On August 29, 2013, a notice of transfer was filed showing that Comerica Bank had transferred its interest in the Wetdog note to Belle on August 13, 2013. (Dckt. 47.) The day before, on August 28, 2013, attorneys Kathleen Horne and Margaret Puccini of Bouhan Falligant, LLP filed a notice of appearance on behalf of Belle. (Dckt. 46.) The Court granted Jeffrey L. Marks's request to appear *pro hac vice* on October 17, 2013. (Dckt. 67.) Mr. Marks has served as Belle's lead counsel throughout this case.

Wetdog filed its original plan and disclosure statement on August 30, 2013. The certificates of service attached to the plan and disclosure statement indicate that Bryan Timothy Glover (as counsel for Comerica Bank) as well as Kathleen Horne and Maggie Puccini of Bouhan Falligant LLP were served. The disclosure statement provided that Belle's secured claim was $1,882,320.14 and would be repaid with the following repayment terms: twenty-five year amortization at 4.25% and monthly payments of $10,197.25. (Dckt. 48, at 14.) The original plan provides with respect to Belle's allowed secured claim:

> The allowed claim of Belle Resources, Ltd., successor in interest to Comerica Bank ("Belle") in the amount of $1,882,320.14 (Claim #3) is secured by a first priority lien on real property known as 14 & 16 W. Hull Street, Savannah, GA 31401.

AO 72A
(Rev. 8/82)

> This claim shall be paid in full, with interest, as set forth below. Debtor shall make monthly payments to Belle in the amount of $10,197.25 for 300 months beginning on the first day of the month following the month during which the plan becomes effective and continuing on or before the same day of each consecutive month thereafter. The monthly payment represents principal and interest on $1,882,320.14 amortized over twenty-five (25) years at 4.25% interest. This creditor shall retain its existing liens. All terms of the existing loan documents between the parties are incorporated by reference herein and shall continue to apply except as expressly modified by this plan.

(Dckt. 49, at 4.)

On September 17, 2013, the Court entered the third interim cash collateral order, which authorized Wetdog's use of Belle's cash collateral. (Dckt. 57.) Belle consented to Wetdog's use of cash collateral on the same terms as Comerica Bank. In the end, Belle consented to the extension of cash collateral use five more times, eventually extending the permitted time through plan confirmation. (Dckts. 84, 90, 108, 130, 175.) Wetdog made a total of $199,750.00 in cash collateral payments to Belle and its predecessor in interest during this case. (Hr'g Tr. 32.)

The Court held a hearing on the disclosure statement on October 9, 2013. Belle neither filed a written objection to the disclosure statement nor appeared at the October 9 hearing. On October 31, 2013, the Court entered an order approving the disclosure statement. (Dckt. 71.)

In January 2014, Belle sent a spreadsheet to Wetdog. (Ex. D-4.) The spreadsheet was prepared by Susan Galdenzi, an officer of Belle, and purports to show the calculation of interest on the Wetdog note from April 5, 2013 to December 31, 2013 and uses an interest rate of LIBOR plus 4.25%.

AO 72A
(Rev. 8/82)

On January 27, 2014, Wetdog filed an amended reorganization plan ("Second Amended Plan"). The Second Amended Plan provides with respect to Belle's secured claim:

> The allowed claim of Belle Resources, Ltd., successor in interest to Comerica Bank ("Belle") in the amount of $1,882,320.14 (Claim #3) is secured by a first priority lien on real property known as 14 & 16 W. Hull Street, Savannah, GA 31401.
>
> This claim shall be paid in full, with interest, as set forth below. Debtor shall make monthly payments to Belle in the amount of $11,279.76 for 228 months beginning on the first day of the month following the month during which the plan becomes effective and continuing on or before the same day of each consecutive month thereafter. The monthly payment represents principal and interest on $1,882,320.14 amortized over twenty-five (25) years at 5.25% interest. The balance of the loan shall become due and payable on the date which is nineteen (19) years after the first payment due under this plan. This creditor shall retain its existing liens. All terms of the existing loan documents between the parties are incorporated by reference herein and shall continue to apply except as expressly modified by this plan.

(Dckt. 102, at 4.)

The Small Business Administration ("SBA") holds a second-in-priority lien on the Foley House Inn. The Second Amended Plan, like the debtor's previous proposed plans, provides for the bifurcation of the SBA's $1,365,762.09 allowed claim into secured and unsecured portions based on the value of the Foley House Inn. Because the Foley House Inn's value was determined to be $2,939,401.00 and the amount of Belle's secured claim in the plan is $1,882,320.14, the Second Amended Plan provides that the SBA has a secured claim of $1,057,080.90. (Dckt. 102, at 5.)

On February 18, 2014, Guy G. Gebhardt, Acting United States Trustee for Region 21 ("U.S. Trustee"), filed an objection to the Second Amended Plan;

however, that objection was withdrawn on April 1, 2014. (Dckts. 119, 154.) Belle

filed its objection to the Second Amended Plan on February 21, 2014. (Dckt. 122.) In

the objection, Belle asserted that confirmation should be denied for three reasons:

(1) the Second Amended Plan lacks good faith under Bankruptcy Code § 1129(a)(3);

(2) the Second Amended Plan is not feasible under Bankruptcy Code § 1129(a)(11);

and (3) the Second Amended Plan violates the absolute priority rule of Bankruptcy

Code § 1129(b)(2)(B)(ii). (Dckt. 122.)

On February 21, 2014, the parties filed a pre-trial stipulation. (Dckt.

126.) The parties stipulated that: "Debtor has been making adequate protection

payments in the amount of $11,750.00 per month since this case was filed and has not

been late or missed a single payment since then." (Dckt. 126, at 3.) In Wetdog's

statement of the case in the pre-trial stipulation, Wetdog stated: "Due to the fact that

the value of the property is shown to be almost $3,000,000 and the debt owing to Belle

*is now even lower than $1,882,320.14*, after credit for post-petition payments, with

over $1,000,000 in equity over and above its claim, there is no chance that Belle will

become undersecured under any set of circumstances." (Dckt. 126, at 3 (emphasis

added).) In Belle's statement of the case, Belle did not refute Wetdog's assertion that

its secured claim had been reduced through the payment of adequate protection

payments and did not contend at that time that its claim was in fact increasing at a

significant rate.

On February 26, 2014, the Court held the first confirmation hearing on

the Second Amended Plan. Next, Wetdog amended the Second Amended Plan on

March 11, 2014; however, it later withdrew that amendment. (Dckt. 137.)  On March 13, 2014, Wetdog amended the Second Amended Plan for the last time. (Dckt. 138.) This amendment improved the treatment of the general unsecured claims class in order to garner the affirmative vote of that class for plan confirmation.

The confirmation hearing was concluded on April 2, 2014.  At the close of that hearing, Belle withdrew its § 1129(a)(3) objection. (Dckt. 122-1, at 8.)

At the confirmation hearings, both Wetdog and Belle presented expert witnesses who testified about the financial projections they had prepared to support their respective positions on whether the Second Amended Plan was feasible. Notably, neither Belle's expert witness nor Wetdog's expert witness prepared projections for, or testified about, a scenario where Belle's secured claim would be larger than the amount provided in the Second Amended Plan.

At a Chapter 13 confirmation hearing held on June 17, 2014 in the Rogers' bankruptcy case,[5] Belle's counsel, Mr. Marks, stated:

> Now I may have given bad advice to my client, but I said in the Wetdog case do not charge the default interest rate. I'm [used to] my jurisdiction [where] we're not allowed to do that. And Ms. Horne corrected me and [said] down here you can do that. So I gave some bad advice on that.

(Ex. D-2, at 25.)

Back in Wetdog's bankruptcy case, the Court confirmed the Second Amended Plan, with the corresponding plan amendments, on September 8, 2014. *In re Wetdog, LLC*, 518 B.R. 126 (Bankr. S.D. Ga. 2014) (Coleman, J.).

---

[5] The Rogers' case has since been voluntarily converted to a case under Chapter 11.

On September 23, 2014, Belle sent another spreadsheet to Wetdog. (Ex. D-5; Hr'g Tr. 127, Feb. 9, 2015.) Like the spreadsheet provided in January 2014, this spreadsheet was also prepared by Susan Galdenzi. The spreadsheet purports to show the calculation of interest on the Wetdog note from April 5, 2013 to August 31, 2014 and uses an interest rate of 18%. The spreadsheet also shows attorneys' fees and other professional fees being added over time as they were incurred by Belle.

On September 26, 2014, Wetdog filed an objection to Belle's claim. (Dckts. 192.) Wetdog amended the objection on October 6, 2014. (Dckt. 193.) Belle filed a response to Wetdog's amended objection on December 1, 2014. (Dckt. 203.)

On December 3, 2014, Wetdog filed a motion in limine to exclude certain evidence related to the application of the note's default interest rate and allowance of Belle's attorneys' fees, to which Belle filed a response on December 11, 2014. (Dckts. 204, 211.) On December 16, 2014, the Court held a status conference. On January 29, 2015, Belle filed the § 506(b) Motion. (Dckt. 220.)

On January 7, 2015, Wetdog deposed Susan Galdenzi in her capacity as the representative of Belle. (Ex. D-7.) Ms. Galdenzi does the bookkeeping for Belle and makes entries related to the Wetdog note. She is involved with and has ownership interests in about twenty-five businesses. In its 2013 tax return, which was filed in September 2014 and signed by Ms. Galdenzi, Belle claimed interest income on the Wetdog note at the non-default contract rate of LIBOR plus 4.25%. (Ex. D-7, at 37, 81.)

On February 5, 2015, the parties stipulated to the following facts (among others):

> 30. According to the Court's Opinion dated September 5, 2014, which confirms the Second Amended Plan of Reorganization filed by the Debtor as of September 8, 2014, "Belle holds a $1,882,320.14 secured claim."
>
> 31. For purposes of the current action, Belle is an over-secured creditor in an amount of at least $500,000.00.
>
> . . . .
>
> 34. On November 17, 2014, Debtor filed its Expert Report prepared by its CPA, Bradley Lucas, detailing its calculation of the Belle debt as of confirmation of Debtor's Plan (September 8, 2014).
>
> 35. On November 17, 2014, Belle filed its Expert Report prepared by its CPA, Austin York, detailing its calculation of the Belle debt as of confirmation of Debtor's Plan (September 8, 2014).
>
> 36. On December 11, 2014, Belle filed its Amended Expert Report prepared by its CPA, Austin York, detailing its recalculation of the Belle debt as of confirmation of Debtor's Plan (September 8, 2014).
>
> . . . .
>
> 41. The hourly rate being charged by Belle's attorneys is reasonable.

(Dckt. 221.)

On February 9, 2015, the parties filed pre-hearing briefs. (Dckts. 225–26.) On February 19, 2015, the Court held a hearing on Wetdog's claim objection and Belle's § 506(b) Motion, after which the Court took the matters under advisement. Austin York, a CPA, gave expert testimony on Belle's behalf. Bradley Lucas, also a CPA, gave expert testimony on Wetdog's behalf. At the hearing Belle stipulated to the admissibility of seven exhibits tendered by Wetdog. (Hr'g Tr. 6–7.) One those

exhibits is the full transcript of the deposition of Susan Galdenzi. (Ex. D-7.) Also, Wetdog stipulated to the admissibility of five exhibits tendered by Belle, which included Mr. York's expert witness report and various bills and invoices relating to Belle's employment of lawyers and experts. (Ex. Belle-A to Belle-E.)

For the reasons explained in Part IV below, I find that Scenario 1 from Bradley Lucas's expert report best approximates the outstanding debt secured by Belle's lien as of the date that the Second Amended Plan was confirmed. (*See* Ex. D-1C.) Wetdog agrees, and consequently the Court finds, that Belle is entitled to interest under § 506(b) on its secured claim during the Pendency Period, accruing at the contractual non-default rate of LIBOR plus 4.25%, except that no interest accrued for the first four months of that period.[6] (*See* dckt. 226, at 22.) Based on those assumptions and after taking into account the timing of Wetdog's cash collateral payments, Mr. Lucas calculates that $88,016.13 of interest accrued and $199,750.00 of cash collateral payments were made during the Pendency Period. (*See* Ex. D-1C.) As a result, Belle's secured claim of $1,882,320.14 as of the petition date was reduced to roughly[7] $1,770,586.27 by the confirmation date. (Hr'g Tr. 30.)

---

[6] For reasons unknown, Comerica Bank applied cash collateral payments directly to principal reduction during this four-month period. *See* Ex. D-3.) As explained in Part IV below, it is now too late for Belle to litigate its entitlement to interest during this period due to the res judicata effect of plan confirmation.

[7] The Court uses the term "roughly" because Mr. Lucas's projections use an ending date of September 5, 2014 rather than the Second Amended Plan's confirmation date or effective date. Also, as Mr. York pointed out, Mr. Lucas appears to have used an average ninety-day LIBOR rate in his projections whereas the Wetdog Note requires the use of the LIBOR rate for the first day of each quarter. (Hr'g Tr. 103.)

AO 72A
(Rev. 8/82)

On March 2, 2015, the parties submitted post-hearing briefs. And finally, on March 10, 2015, Belle filed a motion to strike portions of Wetdog's post-hearing brief. (Dckt. 236.)

## III. SUMMARY OF THE PARTIES' ARGUMENTS

Wetdog objects to the amount of Pendency Period interest Belle now claims and Belle's attempt to add Pendency Period attorneys' fees and expenses to its debt. The parties disagree about the proper Pendency Period interest rate to be applied to Belle's claim. The Parties also disagree about whether and to what extent Belle is entitled to claim attorneys' fees and expenses covering the Pendency Period.

In Wetdog's pre-hearing brief, it asserts that Belle cannot charge the note's default interest rate because (1) Belle's counsel made a judicial admission that Belle was not charging default interest; (2) Belle is now estopped from charging default interest; and (3) Belle never sought court approval to charge default interest. According to Wetdog: "The interest rate to be applied to the Belle debt during the Pendency Period [should] be calculated based on the non-default contract rate of the 90-day LIBOR rate plus 4.25% from Belle's acquisition of the Note through Confirmation of the Plan. For the first four months when Comerica Bank held the loan, no interest [should be] allowed." (Dckt. 226, at 22.)

Regarding Belle's claimed fees and expenses, Wetdog argues that Belle failed to file a Bankruptcy Rule 2016 application and obtain the Court's approval *before* it added post-petition attorneys' fees (and expert witness fees) to the amount of Wetdog's outstanding debt. Wetdog further argues that a large portion of the fees

AO 72A
(Rev. 8/82)

incurred by Belle were unreasonable because the actions taken by Belle were unnecessary to protect its interest due to Belle's initial equity cushion of over $1 million (at the outset of the bankruptcy case). (Dckt. 226.) At the February 19, 2015 hearing, Wetdog argued that the res judicata effect of plan confirmation barred Belle from charging § 506(b) fees and expenses.

In response, Belle argues that there is no time limit for seeking Pendency Period interest and reimbursable fees and expenses under § 506(b). Also, Belle contends that Texas law governs the note so it may lawfully charge the maximum legal rate under Texas law, which it alleges is about 13%. Additionally, Belle argues that the addendum to its proof of claim preserves its rights to collect post-petition amounts. (*See* Hr'g Tr. 144.)

## IV. CONCLUSIONS OF LAW

The Court will first address the claim objection and the § 506(b) Motion.[8] To determine the amount and character of an oversecured creditor's claim, the interplay of Bankruptcy Code §§ 502, 506(a), and 506(b) must be considered. Bankruptcy Code § 502 provides that if a claim objection is made, "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount," except to the extent that exceptions enumerated in § 502(b) apply.

[8] The Second Amended Plan contains the following language: "Debtor reserves the right to object to claims either before or after confirmation. The debtor shall have ninety (90) days following confirmation to file any and all objections to claims." (Dckt. 102, at 12.) Wetdog's claim objection was filed within that ninety-day period.

11 U.S.C. § 502(b). Under this framework, *pre-petition* interest and fees are permitted to the extent allowed under applicable non-bankruptcy law as a part of the creditor's allowed claim under § 502. Once a voluntary petition is filed, however, the general rule in bankruptcy cases is that creditors do not receive post-petition interest, fees, costs, and charges. *See* 11 U.S.C. § 506(b)(2) (disallowing claims for "unmatured interest").

To determine the character of a creditor's allowed claim, § 506(a) provides that it "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property" . . . "and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a). Section 506(b), in turn, provides an important exception for oversecured creditors to the general rule that creditors do not receive post-petition interest and fees:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b); *Southside LLC v. SunTrust Bank (In re Southside, LLC)*, 520 B.R. 914, 920 (Bankr. N.D. Ga. 2014) (Murphy, J.) ("The Security Deed provides for attorneys' fees incurred in bankruptcy proceedings; therefore, pursuant to § 506(b),

SunTrust is allowed post-petition interest and reasonable attorneys' fees up to the value of the property less SunTrust's prepetition claim." (footnote omitted)).[9]

## A. The Pendency Period Interest Rate Is Limited to LIBOR Plus 4.25%

Based on a review of the caselaw, the majority rule appears to be that there is "a rebuttable presumption that the oversecured creditor is entitled to default interest at the contract rate subject to adjustment based on equitable considerations." *In re Partners LLC*, 470 B.R. 126, 134 (Bankr. S.D.N.Y. 2012) (collecting cases). My colleague, Judge Lamar W. Davis Jr., has embraced another well-reasoned and perhaps equally substantial line of cases that holds interest is allowed at the contractual default rate (as long as that rate would be enforceable under applicable state law) without a reasonableness inquiry or an adjustment based on equitable concerns. *In re Gillikin*, No. 09-60178, 2011 WL 7704353, at *4 (Bankr. S.D. Ga. Mar. 3, 2011) (Davis, J.); *In re Del-A-Rae*, 448 B.R. 303, 305 (Bankr. S.D. Ga. 2011) (Davis, J.) (same). In this case, it is undisputed that Wetdog was in default when it filed its bankruptcy petition. Also, allowing interest at the contractual default rate would not exceed the amount by which Belle is oversecured. Nevertheless, as discussed in detail below, the res judicata effect of plan confirmation now bars Belle from establishing its entitlement to interest at the default rate during the Pendency Period.

[9] The Court notes here that § 506(b) controls an oversecured creditor's entitlement to interest accrued and fees incurred *only* up to plan confirmation and has no application to a secured creditor's entitlement post-confirmation. *See Telfair v. First Union Mort. Corp.*, 216 F.3d 1333, 1338 (11th Cir. 2000).

**1. *Res Judicata Effect of Plan Confirmation***

In this case, there is a confirmed plan. "[T]he provisions of a confirmed plan bind the debtor . . . and any creditor, . . . whether or not the claim . . . of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a). This Court's order confirming Wetdog's plan is a final judgment. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) (citing *Finova Capital Corp. v. Larson Pharmacy Inc. (In re Optical Techs., Inc.)*, 425 F.3d 1294, 1300 (11th Cir. 2005)). "When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike. Confirmation has preclusive effect, foreclosing relitigation of any issue actually litigated by the parties *and any issue necessarily determined by the confirmation order*." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (emphasis added) (internal quotation marks omitted) (citations omitted).

The Eleventh Circuit has set forth the elements of claim preclusion as follows:

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second, the judgment must be final and on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

*In re Optical Techs.*, 425 F.3d at 1300–01 (quoting *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1550 (11th Cir. 1990) (citations omitted)).

The notice requirement of due process is satisfied because Belle (and/or its predecessor in interest) was scheduled as a creditor and served with a copy of the

AO 72A
(Rev. 8/82)

disclosure statement and all plans in this case. *See In re Optical Techs.*, 425 F.3d at 1301. Belle and Wetdog were both parties to the confirmation proceeding,[10] and Belle had "a full and fair opportunity" to raise any objections it may have had to the asserted amount of its total secured claim in the Second Amended Plan. *Justice Oaks*, 898 F.2d at 1550. Through the plan confirmation process, the amount of Belle's secured claim was actually and necessarily determined to be $1,882,320.14. In fact, as previously discussed, the amount of the secured portion of the SBA's allowed claim was determined by subtracting the amount of Belle's secured claim from the value of the Foley House Inn.

As a result, the Court finds that the elements for claim preclusion are met in this case. Belle cannot now assert its entitlement to a larger secured claim based on Pendency Period interest because Belle waived that objection when it failed to object to confirmation on that basis and then further failed to appeal the Court's confirmation order on that ground. *See In re Optical Techs.*, 425 F.3d at 1301 (citing *Justice Oaks*, 898 F.2d at 1552).

**2. *The Court Rejects Belle's Argument that There Is No Deadline Under Section 506(b)***

Belle argues that the Bankruptcy Code and Rules do not provide a time limit for filing a motion seeking the allowance of interest and reasonable, fees, costs, and charges under § 506(b). At first glance, this argument appears to have some merit.

---

[10] "[O]ne who participates in a chapter 11 plan confirmation proceeding becomes a party to that proceeding even if never formally named as such." *Justice Oaks*, 898 F.2d at 1551 (citing *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir. 1987)).

For instance, the Bankruptcy Rules provide a deadline for filing a proof of claim. *See* Fed. R. Bankr. P. 3002(c). Meanwhile, the Bankruptcy Rules do not provide a specific deadline for filing such a motion or otherwise establish what procedure should be followed to seek the allowance of a § 506(b) claim.

In support of its position that the deadline has passed, Wetdog cites *In re Westbrook*, 246 B.R. 412 (Bankr. N.D. Ala. 1999) (holding res judicata barred secured creditor from claiming entitlement to post-confirmation interest where Chapter 13 plan clearly did not provide for such interest and the creditor did not object to the plan based on 11 U.S.C. § 1325(a)(5)) and *In re Gillikin*, 2011 WL 7704353 (noting Pendency Period interest rates should have been determined at the disclosure statement stage).

The Court has neither found nor been presented with any controlling authority on the issue of whether a motion and court approval are required before Pendency Period interest under § 506(b) may be become an allowed portion of a secured creditor's claim even if the debtor, as the plan proponent, and the oversecured creditor were to agree on the proper amount and that amount is provided for in the debtor's plan. Where the debtor and oversecured creditor disagree, however, it appears to be the practice that the oversecured creditor will file a motion to establish its entitlement to such interest and fees, which the bankruptcy court will consider in conjunction with plan confirmation. *See, e.g., Prudential Ins. Co. of Am. v. SW Bos. Hotel Venture, LLC (In re SW Bos. Hotel Venture, LLC)*, 748 F.3d 393, 400 (1st Cir. 2014); *In re 431 Ponce De Leon, LLC*, 515 B.R. 660, 696 n.32 (Bankr. N.D. Ga. 2014)

AO 72A
(Rev. 8/82)

(Ellis-Monro, J.) ("With respect to the § 506(b) claim, the Court advised the parties that it would, for purposes of confirmation, estimate [the oversecured creditor's] 506(b) claim.").

In this Court's view, the Bankruptcy Rules do not need to provide a deadline for filing a § 506(b) claim because the total allowed amount of a secured creditor's claim is an issue necessarily decided in the plan confirmation context. If the proposed plan's treatment of an oversecured creditor's claim does not compensate it for the allowed amount of its § 506(b) claim, then the plan would not be "fair and equitable" within the meaning of Bankruptcy Code § 1129(b)(2)(A)(i)(II) with respect to the class containing the oversecured creditor's claim and, therefore, the plan would not be confirmable if the oversecured creditor voted to reject the plan. *See* 11 U.S.C. § 1129(a)(8), (b)(1).

### 3. *The Addendum to Belle's Proof of Claim Cannot Overcome the Res Judicata Effect of Plan Confirmation*

Belle correctly points out that, due to the language in the addendum to its proof of claim stating that it was reserving its right to add post-petition interest and fees under the note, Wetdog should have expected that the amount of Belle's secured claim would increase by the amount of its § 506(b) claim. However, as the Supreme Court of the United States directed:

> [W]here the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect. *See, e.g., Negrón–Almeda v. Santiago*, 528 F.3d 15, 23 (1st Cir. 2008) ("[A] court must carry out and enforce an order that is clear and unambiguous on its face"); *United States v. Spallone*, 399 F.3d 415, 421 (2d Cir. 2005) ("[I]f a judgment is clear and unambiguous, a court must adopt, and give effect to, the plain

> meaning of the judgment" (internal quotation marks omitted)). If it is black-letter law that the terms of an unambiguous private contract must be enforced irrespective of the parties' subjective intent, see 11 R. Lord, Williston on Contracts § 30:4 (4th ed. 1999), it is all the clearer that a court should enforce a court order, a public governmental act, according to its unambiguous terms.

*Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 150–51 (2009). Here, the Second Amended Plan's terms, which this Court confirmed, are clear that Belle's secured claim is $1,882,320.14.

In support of its position that it adequately preserved its § 506(b) claim, Belle cites *Fawcett v. United States (In re Fawcett)*, 758 F.2d 588 (11th Cir. 1985) and *Clark v. Washington Mutual Home Loans (In re Clark)*, 299 B.R. 694 (Bankr. S.D. Ga. 2003) (Dalis, J.).

*Fawcett* does not require a different result. In *Fawcett*, the Eleventh Circuit Court of Appeals affirmed the district court's affirmance of a bankruptcy court order finding that the Internal Revenue Service ("I.R.S.") was entitled to post-petition interest on its secured claim. The I.R.S.'s proof of claim listed the unpaid taxes as a secured claim and stated: "For the purposes of section 506(b) of the Bankruptcy Code, post-petition interest may be payable." *Id.* at 589. The debtor's Chapter 13 plan provided that the I.R.S.'s claim would be "paid in full-100%" without further elaboration. *Id.* The debtor argued that the I.R.S. should have filed a more specific proof of claim or objected to plan confirmation if it wanted post-petition interest. Faulting the debtor for any ambiguity in the plan's terms, however, the Eleventh Circuit held that "the I.R.S. put the debtor on notice that it would be claiming post-

AO 72A
(Rev. 8/82)

petition interest while the debtor failed to put the I.R.S. on notice that its claim would not be paid in full by the amount of the post-petition interest." *Id.* at 591.

At first blush, *Fawcett* would appear to control the result in this case. Just as the I.R.S. in *Fawcett* provided notice of its intent to claim post-petition interest in its proof of claim, Belle's proof of claim clearly provides notice that it reserves the right to seek interest and fees, costs, and charges under § 506(b). Also, similar to how the plan in *Fawcett* provided that that I.R.S. would be "paid in full," Wetdog's confirmed plan provides that Belle's claim will be "paid in full, with interest." The crucial distinction is that, in *Fawcett*, the debtor's plan did not contain any language modifying the 100% guaranty. In contrast, Wetdog's plan is clear that Belle will be paid in full by receiving payments whose present value equals $1,882,320.14, an amount that does not include any enhancement attributable to § 506(b).

Belle's reliance on *Clark* is likewise unavailing. In *Clark*, the debtor filed an adversary proceeding after her plan was confirmed claiming that an oversecured creditor's attempt to collect a higher payoff amount (based on attorney's fees incurred post-petition) than the amount in its proof of claim violated Bankruptcy Code §§ 506 and 362. Because the bankruptcy court had not yet determined if the attorney's fees demanded were reasonable, the court denied the parties cross-motions for summary judgment on those issues. *Clark* is distinguishable because the debtor in that case failed to raise the res judicata effect of plan confirmation and the proceeding was merely at the summary judgment stage.

AO 72A
(Rev. 8/82)

Also, in *IRT Partners, L.P. v. Winn-Dixie Stores, Inc. (In re Winn-Dixie Stores, Inc.)*, 639 F.3d 1053 (11th Cir. 2011), the Eleventh Circuit rejected a line of argument analogous to Belle's position:

> Appellants argue that their original claims contained language reserving the right to amend and supplement those claims. But such language cannot, as a matter of law, be construed to protect in perpetuity appellants' right to amend their claims. Such a construction of this language would truly render illusory all finality achieved by a reorganization plan. We decline to give so broad an interpretation to appellants' purported reservation of rights.

*Id.* at 1057.

**4. *Wetdog's Estoppel Argument***

Pointing to the passage of time and several documents supplied to Wetdog by Ms. Galdenzi through counsel, Wetdog argues that Belle is equitably estopped from charging interest at the contract's default rate for the Pendency Period. The Court finds above that Belle is barred by the res judicata effect of Wetdog's confirmed plan from now litigating its entitlement to Pendency Period interest at the contractual default rate; therefore, I decline to rule on the issue of equitable estoppel because to do so would be unnecessary.

**5. *Wetdog Concedes that Belle Is Entitled to Pendency Period Interest at the Non-Default Contract Rate***

Notwithstanding the res judicata effect of plan confirmation, Wetdog does not contend that Belle is not entitled to *any* Pendency Period interest. Wetdog argues that it was the parties' understanding throughout the case that interest would accrue at the non-default contract rate for the period after Belle acquired the Wetdog

note. Accordingly, Belle is entitled to the following: Pendency Period interest at the non-default contract rate of the ninety-day LIBOR rate plus 4.25% with the exception that for the first four months when Comerica Bank held the Wetdog note, no interest accrued. (*See* dckt. 226, at 22.)

To reiterate, this finding is based on Wetdog's concession and the Court's holding that res judicata applies. The Court is not determining at this time that the non-default interest rate is more appropriate than the default interest rate or adopting any standard for making such determinations in future cases. *See, e.g.*, *Southland Corp. v. Toronto-Dominion (In re Southland Corp.)*, 160 F.3d 1054, 1060 (5th Cir. 1998) (affirming the bankruptcy court's decision to award secured creditor interest at the default rate both pre- and post-petition because that creditor "triggered the default interest under the contract, the plan did not 'cure' defaults, and default interest at the contract rate was not inequitable"); *Cliftondale Oaks, LLC v. Silver Lake Enters., LLC (In re Cliftondale Oaks, LLC)*, 357 B.R. 883, 885–86 (Bankr. N.D. Ga. 2006) (Drake, J.).

**B. <u>Belle Is Now Barred from Claiming Section 506(b) Fees, Costs, and Charges</u>**

Regardless of contrary nonbankruptcy law, a first-in-priority secured creditor is entitled to add post-petition attorney fees to its secured claim to the extent that the fees plus the other components of its secured claim do not exceed the value of the collateral if "(1) the creditor is oversecured; (2) the fees are reasonable; and (3) the fees are provided for in the agreement or state statute under which the claim arose." *In*

*re Amron Techs. Inc.*, 376 B.R. 49, 54 (Bankr. M.D. Ga. 2007) (Walker, J.). As outlined below, the res judicata effect of plan confirmation now bars Belle from seeking the allowance of "reasonable fees, costs, and charges" for the same reasons discussed in Part IV.A.1–3 above.

1. ***Belle Is Barred from Charging 15% Contractual Attorney's Fees for Wetdog's Pre-Petition Default***

As a preliminary matter, Belle argued at the hearing, but not in any of its filings, that it is entitled to an unsecured claim to the extent that the Court determines that its reasonable fees are less than 15% of sums due under the Wetdog note based on a provision of the note. (*See* Ex. D-1A.) The parties agree that Texas law governs the note, but whether Texas law or Georgia law governs is irrelevant. (Dckt. 231, at 5.) Belle's proof of claim, which has not been amended, stated the amount it was due as of the petition date. That amount did not include the 15% contractual fees now claimed. Wetdog is correct that even if those fees had vested pre-petition,[11] those fees were not included in Belle's proof of claim and, therefore, are not part of its allowed claim under Bankruptcy Code § 502.[12] Even as late as the February 2015 hearing, Belle

[11] If Georgia law were to apply, Wetdog disputes that the fees had vested pre-petition, and the Court is skeptical as well. *See Bank of the Ozarks v. Coastal Realty Invs., Inc. (In re Coastal Realty Invs., Inc.)*, No. 12-20564, 2014 WL 929612, at *9 (Bankr. S.D. Ga. Mar. 10, 2014) (Dalis, J.) ("The combination of the established case law and the 10–day vesting period required by O.C.G.A. § 13–1–11(a)(3) allows debtors to minimize their contractual liability for attorneys' fees by filing for bankruptcy before the mandatory 10–day waiting period has expired.").

[12] In any event, it is far from established to the Court that the 15% figure would apply because, although the Wetdog Note provides that if there is a default and the note is collected through bankruptcy then the maker agrees to pay the reasonable attorney's fees of the payee and the expenses of collection, the stipulation that reasonable

AO 72A (Rev. 8/82)

conceded that $1,882,320.14 is what it was owed on the petition date. (Hr'g Tr. 21.)

Even if res judicata did not bar Belle's § 506(b) claim and the Court construed the

§ 506(b) Motion simply as a claim amendment, post-bar-date amendments are

subjected to careful scrutiny under Eleventh Circuit precedent. *See In re Northlake Hotels, Inc.*, No. 12-80104-WLH, 2014 WL 1477397, at *2 (Bankr. N.D. Ga. Apr. 3, 2014) (Hagenau, J.).

As an aside, Belle argues that if its fees are barred, Wetdog's attorneys'

fees are similarly barred because Wetdog has not yet filed its final application for

approval of compensation in the case. (Hr'g Tr. 159.) This argument is meritless

because Wetdog's confirmed plan provides: "The § 507(a)(2) fees and expenses of

McCallar Law Firm for representing Debtor in this case are to be paid when allowed

by the Bankruptcy Court from cash on hand held by Debtor or as may be remaining on

retainer." (Dckt. 102, at 3.) The Second Amended Plan further provides that:

"McCallar Law Firm shall continue to be attorneys for the Debtor through the

confirmation date and thereafter and shall be entitled to compensation from funds of

the Debtor up to confirmation when and as approved by the Court." (Dckt. 102, at 10.)

Therefore, the Second Amended Plan specifically provides for Wetdog's attorneys'

fees rather than operating to bar them.

---

attorney's fees equal 15% is conditioned on the phrase "unless any party pleads otherwise." Wetdog, as a party to the note, has certainly pleaded otherwise by arguing that Belle's attorney's fees are unreasonable.

**2. *The "Reasonableness" of Belle's Fees, Costs, and Charges***

In its § 506(b) Motion,[13] Belle seeks reimbursement for fees in the amount of $152,571.57. Even though it was oversecured by nearly $1 million on the petition date, Belle contends that its active participation in the case was reasonable due to its conviction that the Foley House Inn is "diminishing and depreciating on a daily basis." (Hr'g Tr. 161.) In support of its fees, Belle points out that it voluntarily omitted arguably unreasonable time entries such as time related to acquiring the Wetdog note, certain preliminary intra-firm discussions, travel time to hearings, investigating the possibility of buying the SBA's interest in the bankruptcy case, and Texas counsel fees related to a guarantor suit against Grant and Alisen Rogers. Regarding the time entries for local counsel, Belle points to Local Rule 83.4, which mandates local counsel because Mr. Marks was appearing *pro hac vice*.

Belle argues that its requested fees are in line with those allowed by my colleague John S. Dalis in *In re Coastal Realty*. In *In re Coastal Realty*, the bankruptcy court applied the lodestar analysis to determine the reasonableness of an oversecured creditor's fees. Under the facts of that case, the court found that fees incurred in connection with the collection of guaranty agreements were reasonable and

[13] Belle's counsel refers to this filing as its "Rule 2016 motion." Because to do so would be unnecessary, the Court declines to rule on whether Bankruptcy Rule 2016 applies to an oversecured creditor's claim for fees, costs, and charges under § 506(b). However, the Court notes that the rule by its express terms limits its application to "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses from the estate . . . ." Fed. R. Bankr. P. 2016(a) (emphasis added). That does not appear to be what a creditor is requesting when moving for the allowance of its § 506(b) claim.

necessary to protect the oversecured creditor's rights. *In re Coastal Realty*, 2014 WL 929612, at *14.

In response, Wetdog argues that *In re Coastal Realty* actually supports its view that Belle's fees exceeded what was reasonable because, in that case, the oversecured creditor's secured claim of $1,148,386.22 (exclusive of its § 506(b) claim) was secured by property determined by the court to be worth $1,375,000.00, leaving only $226,613.78 of protection for its claim. Wetdog also argues that (1) of the $12,500 of engineering fees that Belle sought to be reimbursed for, it only provided documentation for $10,000.00 (Hr'g Tr. 210), and (2) the accounting firm's invoices are not detailed enough to review for their reasonableness. (Hr'g Tr. 233.)

Because the Court finds above that Belle is barred by the res judicata effect of Wetdog's confirmed plan from now litigating its entitlement to reasonable fees, costs, and charges under § 506(b), I decline to determine the extent to which its fees were reasonable on the grounds that to do so would be unnecessary.

**C. Does *Bateman* Require a Different Result?**

In *Universal American Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir. 2003), Universal American Mortgage Company ("Universal") filed a proof of claim in a Chapter 13 case asserting that it was owed $49,178.80 for a pre-petition arrearage on the debtor's home mortgage. Prior to plan confirmation, no party in interest filed an objection under Bankruptcy Rule 3007 to Universal's claim. Although the debtor's plan only proposed to pay $21,600.00 on Universal's pre-petition arrearage claim, the debtor's plan was confirmed without objection by

AO 72A
(Rev. 8/82)

Universal. After the Chapter 13 trustee discovered the discrepancy, the debtor filed a post-confirmation objection to Universal's claim, which the bankruptcy court granted, and Universal filed a motion to dismiss the case, which the bankruptcy court denied.

The Eleventh Circuit affirmed in part and reversed in part. Because Universal's pre-petition arrearage claim had been allowed under § 502(a) and the debtor had failed to follow Bankruptcy Rule 3007's procedure for rebutting the prima facie effect of the proof of claim regarding the validity and the amount of the debt, the court "refused[d] to permit an inconsistent plan provision to constitute a constructive objection by reason of the Plan's notation of dispute alone, especially where [the] bankruptcy court [did] not consider [the] objection until over a year after the Plan's confirmation." *Id.* at 828 (citing *In re Starling*, 251 B.R. 908, 910 (Bankr. S.D. Fla. 2000)). Accordingly, the Eleventh Circuit reversed the bankruptcy court's decision to grant the debtor's claim objection and rejected the bankruptcy court's holding that Universal was barred from recouping the balance of its mortgage arrearage. *Id.* at 828–29.

As for the bankruptcy court's denial of Universal's motion to dismiss, the Eleventh Circuit affirmed; however, the court held that the allowed amount of Universal's arrearage claim survived the res judicata effect of plan confirmation. *Id.* at 832–33. The Eleventh Circuit relied on its earlier precedent, *In re Thomas*, 883 F.2d 991 (11th Cir. 1989), in which the court held that "a secured creditor's lien survived a Chapter 13 Discharge even though it had not been provided for in the plan and the secured creditor had not filed a proof of claim." *Bateman*, 331 F.3d at 832 (citing *In*

*re Thomas*, 883 F.2d at 997). Therefore, the court held that under the facts and circumstances of the case, "Universal's secured claim for arrearage survives the Plan and it retains its rights under the mortgage until Universal's claim is satisfied in full." *Id.* at 834.

An important distinction must be made here. At issue in *Bateman* was a mortgage arrearage claim, which was owed on the petition date and allowed under § 502(a) because Universal timely filed a proof of claim that was not properly objected to. As provided by the Bankruptcy Rules, a proof of claim filed pursuant to Bankruptcy Rule 3001 "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). In contrast, a creditor's entitlement to a § 506(b) claim is not established merely by filing a proof of claim.[14] This must be true because, if this case had dismissed before confirmation, Belle would have looked solely to the Wetdog note to determine the amount of debt secured by its lien and would not be limited by § 506(b) for the time period when the case was pending before the bankruptcy court. Accordingly, *Bateman* does not require a different result.

**D. Wetdog's Motion in Limine (dckt. 204)**

At the February 15, 2014 hearing, the Court orally denied Wetdog's motion in limine because the Court, as the trier of fact, found it unnecessary to exclude

[14] *In re Jack Kline Co., Inc.*, 440 B.R. 712, 732 (Bankr. S.D. Tex. 2010) ("Filing a proof of claim seeking post-petition interest and fees—as was done here—will not suffice. A proof of claim may include only pre-petition claims. *Condrey v. Endeavour Highrise, L.P. (In re Endeavour)*, 425 B.R. 402, 419 & n.8 (Bankr. S.D. Tex. 2010) (citing Official Bankruptcy Form 10, which expressly states, in bold print, that the claimant should set forth the "Amount of Claim as of Date Case Filed ").

certain evidence related to Belle's professional fees and the application of the Wetdog note's default interest rate. Because the Court finds above that Belle is barred by the res judicata effect of Wetdog's confirmed plan from now claiming entitlement to Pendency Period interest at the default rate and charging Pendency Period fees, costs, and charges, I will deny the motion in limine on the additional ground that the issues presented are now moot.

**E. Belle's Motion to Strike**

Belle moves to strike the post-hearing brief filed by Tiffany Caron on behalf of Wetdog and seeks a money award for the reasonable costs and disbursements, including reasonable attorney's fees, that it incurred filing the motion. (Dckt. 236.) After the February 19, 2015 hearing, the Court invited the parties to submit post-hearing briefs on the issue of whether Texas law has a ten-day vesting requirement similar to the requirement under Georgia Code § 13-1-11. The Court in no way ordered or suggested that briefing of any other issues would be inappropriate.

It support of its position that Wetdog's post-hearing brief (dckt. 231) should be stricken, Belle cites Rule 12(f) of the Federal Rules of Civil Procedure, which it claims is made applicable by Bankruptcy Rule 7012. The matters before the Court are contested matters as opposed to adversary proceedings. See Fed. R. Bankr. P. 7001. The rules for contested matters incorporate certain rules from Part VII of the Bankruptcy Rules to the exclusion of others. *See* Rule 9014(c). Bankruptcy Rule 7012 is *not* one of those rules that applies in a contested matter absent the Court explicitly ordering that the rule will apply. The Court did not make Bankruptcy Rule

7012 applicable to the litigation of the matters under consideration. Consequently, Belle's motion to strike will be denied.

**F.  Conclusion**

Based on the foregoing, Belle is entitled to interest under § 506(b) on its secured claim during the Pendency Period, accruing at the contractual non-default rate of LIBOR plus 4.25%, except that no interest accrued for the first four months of that period. And, Wetdog is entitled to be credited for the $199,750.00 of cash collateral payments it made during the Pendency Period.

The Court will enter a separate order consistent with these findings of fact and conclusions of law.

Dated at Savannah, Georgia, this 14th day of August, 2015.

Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia

AO 72A
(Rev. 8/82)